## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CHRISTOPHER DEMETSENARE AND NIKKI DEMETSENARE, | **Case No.:** |
| Plaintiffs, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | 1. **FCRA, 15 U.S.C. § 1681,** *et seq.* |
| Defendant. | |

Plaintiffs Christopher Demetsenare ("Mr. Demetsenare") and Nikki Demetsenare ("Mrs. Demetsenare") (collectively, "Plaintiffs"), through counsel, allege violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, against Defendant Experian Information Solutions, Inc. ("Experian" or "Defendant").

## I.      INTRODUCTION

1.      Plaintiffs' Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, by the Defendant.  Plaintiffs contend that the Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiffs' consumer reports, and consequently

reported inaccurate information about Plaintiffs. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiffs from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiffs' eligibility for credit.

2.     Plaintiffs' Complaint also alleges that Defendant violated 15 U.S.C. § 1681, *et. seq*, by failing to reasonably investigate after receiving notice of Plaintiffs' consumer disputes, which resulted in Defendant reporting inaccurate information about Plaintiffs.

## II.     JURISDICTION AND VENUE

3.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiffs allege violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

4.     Venue in the Eastern District of Michigan is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## III.     PARTIES

5.     Plaintiffs incorporate herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

6.      Plaintiffs are natural persons who reside in the City of Flint, Genessee County, Michigan.

7.      Plaintiffs are "consumers" as defined by the FCRA, 15 U.S.C. § 1681a(c).

8.      Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

9.      During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Michigan and conducted business in the State of Michigan on a routine and systematic basis.

10.      Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

11.     During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12.     Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## IV.    FACTUAL BACKGROUND

13.     Plaintiffs incorporate herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

14.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16.     The FCRA is intended to ensure CRAs exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

17.     Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiffs and other consumers through the sale of consumer reports (i.e., credit reports).

18.     Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

19.     Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant, and other information must be independently gathered by Defendant, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

20.     Defendant also obtains information from other CRAs (who commonly share information).

21.     Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

22.     The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

23.     Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

24.     Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

25.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

26.     The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

27. FICO Scores are calculated using information contained in Defendant's consumer reports.

28. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of the consumer's creditworthiness.

29. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower the consumer's FICO Score will be.

    b. The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that the consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact the consumer's credit score.

30.     Lenders also consider a consumer's debt-to-income ratio ("DTI") based on the total amount of debt reported by Defendant in consumer reports.

31.     DTI compares the total amount a consumer owes to the total amount the consumer earns.

32.     Defendant regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendant.

33.     A consumer's income, however, is not included in his or her consumer report; only his or her amount of debt is.

34.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

35.     A consumer who has obtained a bankruptcy discharge and has a consumer report that is reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account was accurately reporting as having a zero balance.

36.     Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that

have been reaffirmed or successfully challenged in an adversary proceeding, are discharged.

37.    However, Defendant also knows that it is rare for a pre-petition debt to be reaffirmed or successfully challenged in an adversary proceeding.

38.    Further, Defendant knows that if reaffirmation agreements or adversary proceedings exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

39.    Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendant voluntarily obtained consumer bankruptcy case information.

40.    Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

41.    However, Defendant regularly reports inaccurate information about consumers' debts after they receive a Discharge Order.

42.    Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

43.     Defendant regularly publishes consumer information that conflicts with the information provided by data furnishers, included in Defendant's credit files, contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

44.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate consumer reporting following a Chapter 7 discharge, including failure to report the discharge.

45.     Therefore, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

46.     Plaintiffs filed for a "no asset" Chapter 7 Bankruptcy on or about January 21, 2022, in the United States Bankruptcy Court for the Eastern District of Michigan, petition no. 22-30093-jda.

47.      Plaintiffs received an Order of Discharge on or about April 19, 2022.

48.     Thereafter, Plaintiffs were not personally liable for their dischargeable debts and those debts have a $0 balance after the bankruptcy discharge.

49.     Defendant prepared one or more consumer reports concerning Plaintiffs after Plaintiffs were discharged from Chapter 7 Bankruptcy.

50.     Defendant reported Plaintiffs' credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the dates the accounts were opened, statuses, and the date of the last status update.

51.     Defendant failed to report Plaintiffs' consumer bankruptcy information in the Public Records section or in any individual tradelines of Plaintiff's consumer reports.

52.     Notably, the other CRAs, Equifax Information Services, LLC ("Equifax") and Trans Union LLC ("Trans Union"), accurately reported Plaintiffs' bankruptcy information in the Public Records sections of their respective reports, and in the individual tradelines of their respective reports.

53.     Upon information and belief, Defendant received notice of Plaintiffs' bankruptcy discharge through its independent collection of Plaintiffs' consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiffs' consumer reports.

54.     Defendant also obtains information from other CRAs (who commonly share information).

55.     Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through

bankruptcy," and/or with a zero balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

56.     Defendant should have reported Plaintiffs' bankruptcy filing and discharge information in the public records section of Plaintiffs' consumer reports.

57.     Defendant should have reported all of Plaintiffs' dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero balance, but did not.

58.     Defendant should not have reported any late payment history in the months after Plaintiffs filed for bankruptcy.

59.     Defendant also should not have reported any "charge offs" after the bankruptcy discharge.

### *Inaccuracies on Plaintiffs' Consumer Reports*

60.     As a preliminary matter, Defendant did not indicate that Plaintiffs had filed for bankruptcy and received a discharge.

61.     The name, social security number, and address in Plaintiffs' Chapter 7 petition match the information listed on their respective Experian consumer reports.

62.     Defendant failed to report Plaintiffs' bankruptcy discharge even though Defendant had all the correct personal information for Plaintiff in its database which matched the personal information reported in Plaintiff's Chapter 7 petition (e.g., full name, social security number, address).

63.    Notably, non-parties Equifax and Experian accurately reported Plaintiff's public record bankruptcy filing and discharge based on the same information.

64.    Additionally, furnishers reported the Plaintiffs' discharged/zero account balances, bankruptcy and discharge information to Experian.

65.    Defendant knew or should have known that Plaintiffs' bankruptcy was discharged.

66.    Defendant's failure to report Plaintiffs' bankruptcy, filed in January 2022 and discharged in April 2022, in Plaintiffs' consumer reports contributed to a significant inaccuracy listed in Plaintiffs' Experian consumer reports.

67.    Upon information and belief, the following furnisher of information accurately reported to Defendant that Plaintiffs' accounts were included in Plaintiffs' bankruptcy discharge and/or had a zero balance after the bankruptcy filing/discharge, but Defendant rejected or revoked the data furnished to it and inaccurately overrode the reporting of the account.

68.    On Plaintiff's consumer disclosure, Defendant inaccurately reported Plaintiffs' Synchrony/Care Credit account, beginning with 6019***** and opened in July 2021 (the "Account") as being in "charged off" status, with a $419.00 written off balance, when the Account actually has a zero balance. Defendant knows this account pre-dated Plaintiffs' bankruptcy and was discharged thereby.

69.     The status of "Charge Off" in the consumer credit reporting industry means that a debt may still be owed, especially where, as here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy, or the tradeline indicates there is a balance and/or past due balance owed on the account before or after the "charge off."

70.     The national consumer reporting agencies specifically acknowledge that a "charge off" generally means consumers are still legally responsible for paying the debt.

71.     According to Experian, creditors typically charge off accounts after they have been delinquent; *i.e.*, gone without any scheduled payments for six months.  A charge off does not mean that the debt is forgiven; the consumer is still legally responsible for paying the outstanding amount.

72.     Upon information and belief, Lexis-Nexis furnished information to all three CRAs, including Defendant, that indicated Plaintiffs had filed for bankruptcy and received a discharge, but Defendant rejected or otherwise failed to report the data it received.

73.     Upon information and belief, the data furnisher of the foregoing tradeline provided information to all three CRAs, including Defendant, that indicated the corresponding Account had been discharged in bankruptcy, but Defendant rejected or otherwise overrode the data it received.

74.     In addition, public records reflecting Plaintiffs' bankruptcy filing and subsequent discharge were readily available to Defendant through multiple sources such as PACER, but Defendant failed to review those sources or knowingly rejected them.

75.     In any event, Defendant knew or had reason to know that it reported information contradicted by notices received from third parties.

76.     Defendant inaccurately reported that Plaintiffs owed money that she did not actually owe, and also reported inaccurate Account statuses and payment histories.

77.     Defendant inaccurately reported a charged off account with a balance owed after it was discharged in Chapter 7 Bankruptcy.

78.     Defendant failed to indicate that the Account had a zero-dollar balance and was discharged in Chapter 7 Bankruptcy.

79.     Defendant also erroneously reported that the discharged Account was charged off after the discharge.

80.     Notably, Equifax and Trans Union, the two other national CRAs, reported Plaintiff's bankruptcy and the Account accurately on consumer reports produced after Plaintiffs' discharge.

81.     Defendant's reporting of the Account was patently inaccurate.

82.    If not patently inaccurate, Defendants' reporting of the Account was materially misleading.

*Plaintiffs' Disputes*

83.    On or about March 22, 2023, Plaintiffs called Experian to dispute its inaccurate reporting.

84.    On or about March 31, 2023, Experian contacted Mrs. Demetsenare and indicated that the Account had been removed from her credit report.

85.    The Account, however, remained inaccurately reported on Mr. Demetsenare's Experian credit report.

86.    In addition, Plaintiffs' bankruptcy continued to be omitted from the public records section of their Experian credit reports.

*Plaintiffs' Damages*

87.    Plaintiffs' DTI was negatively affected by Defendant's reporting of debt which Plaintiffs do not owe, in turn negatively impacting Plaintiffs' creditworthiness.

88.    After their discharge, Plaintiffs applied for credit from Community Choice Credit Union.  Mrs. Demetsenare was denied on two occasions due to the erroneous reporting by Defendant.  Mr. Demetsenare, in turn, was approved at less favorable terms due to the erroneous reporting by Defendant.

89.     Mrs. Demetsenare also applied for credit for an auto loan and was denied due to the erroneous reporting by Defendant.

90.     Defendant's inaccurate reporting of the Account, along with additional information belonging to Plaintiffs, was published to creditors by Defendant during the process of Plaintiffs' credit applications.

91.     Plaintiffs' consumer credit files and consumer reports were also reviewed by numerous other entities after the discharge of their bankruptcy; those entities viewed the erroneous information published by Defendant.

92.     As a direct result of Defendant's inaccurate reporting, Plaintiffs suffer damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.  Plaintiffs also have been afraid to apply for needed auto loan credit under the circumstances.

93.     As a direct result of Defendant's inaccurate reporting, Plaintiffs also suffer actual damages in the form of attorneys' fees incurred.

94.     Additionally, Plaintiffs suffer interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiffs' privacy, embarrassment, and anxiety.


//

**V.    COUNT I**
**Violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i**

95.    Plaintiffs incorporate herein by reference all the above paragraphs of their Complaint as though fully set forth herein at length.

96.    The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

97.    Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer receives a Discharge Order.

98.    Defendant received notice of Plaintiffs' bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Defendant through sources of consumer information such as Lexis Nexis, Defendant's own files, and information provided by data furnishers, yet Defendant rejected that information.

99.    Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiffs, who have been discharged from Chapter 7 Bankruptcy.

100.    Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

101. Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

102. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records and its own files, including other furnishers that report to Defendant that the consumer's bankruptcy has been discharged.

103. In this case, Defendant inaccurately reported an account it knew predated Plaintiffs' Chapter 7 Bankruptcy, was included and discharged by Plaintiffs' bankruptcy discharge, and should therefore have reported with a zero balance.

104. Defendant's failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because the Defendant regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

105. Defendant knew or should have known it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

106. Defendant knew or should have known it is obligated, by the FCRA, to update consumer reports and individual tradelines after receiving notice of a Chapter 7 Bankruptcy Discharge.

107. Defendant knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

108. CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the Defendant.

109. Therefore, Defendant had ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

110. If Defendant contends it did not have sufficient notice, Defendant must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including where consumers file for Chapter 7 Bankruptcy.

111. Defendant regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties for a profit.

112. In this case, Defendant knew or should have known about Plaintiffs' bankruptcy filing and discharge and failed to include that information in Plaintiffs' consumer disclosure and in consumer reports published to third parties.

113.   When Defendant received notice of Plaintiffs' bankruptcy information, it had an obligation to ensure it reported Plaintiffs' discharge and its effects with maximal accuracy.

114.   Unfortunately, Defendant willfully and consciously breached its duties as a CRA and deprived Plaintiffs of their right to a fair and accurate consumer report.

115.   Despite knowledge of its legal obligations, Defendant violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiffs' consumer disclosure/consumer report.

116.   Defendant knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date.

117.   Yet, in this case, Defendants reported an account that pre-dated Plaintiffs' bankruptcy with a balance owed, an improper charge off account status, and/or erroneous late payment history, after Plaintiffs' discharge.

118.   Defendant knew or should have known the information it reported about the Account was inaccurate.

119.   Defendant violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information Defendant is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

120.    When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable investigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

121.    When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

122.    Additionally, the CRA must notify the person who furnished the disputed information about the consumer's dispute within five business days of its receipt. 15 U.S.C. § 1681i(a)(2)(A).

123.    Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Defendant violated the FCRA by failing to perform a reasonable reinvestigation of the disputed information even after Plaintiffs notified Defendant of the inaccurate information reported in Plaintiffs' respective credit files.

124.    Defendant's violations of 15 U.S.C. § 1681i include, but are not limited to, the following: a) failing to reasonably reinvestigate the inaccurate information that Plaintiffs disputed; and b) failing to consider all relevant information while investigating Plaintiffs' dispute.

125.    Instead of reasonably reinvestigating Plaintiffs' disputes, Defendant continued to report the discharged Account in charged off status on Mr. Demetsenare's credit reports. Defendant also continued to omit Plaintiffs' bankruptcy information from the Public Records sections in their respective credit reports.

126.    Defendant's violations of 15 U.S.C. § 1681e(b) and/or § 1681i were willful.

127.    Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) and/or § 1681i were negligent.

128.    Defendant's inaccurate reporting damaged Plaintiffs' creditworthiness.

129.    Plaintiffs suffer actual damages, including the above-referenced economic damages, a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendant inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

130.    Plaintiffs also suffer interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

131.    Defendant is a direct and proximate cause of Plaintiffs' damages.

132.    Defendant is a substantial factor in Plaintiffs' damages.

133. Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, and costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment against Defendant for the following:

(a) Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(e) An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

//

## VII.   JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 25th day of July 2023..

By: */s/ Michael J. Plati*
Michael J. Plati, AZ #16705
**CONSUMER ATTORNEYS**
8245 N 85th Way
Scottsdale, AZ 85258
T: (602) 807-1505
F: (718) 715-1750
E: mplati@consumerattorneys.com

Sylvia Bolos, MI Bar No. P78715
**CONSUMER ATTORNEYS**
8245 N 85th Way
Scottsdale, AZ 85258
T: (248) 406-6025
E: sbolos@consumerattorneys.com

Consumer Attorneys
22000 Michigan Avenue, Ste. 200
Dearborn, MI 48124

*Attorneys for Plaintiffs*
*Christopher and Nikki Demetsenare*